**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Wojtysiak, et al., | No. CV-18-00148-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| State Farm Mutual Automobile Insurance Company, et al., | |
| Defendants. | |

Plaintiffs Martin and Deborah Wojtysiak allege that Defendant State Farm Mutual Automobile Insurance Company ("State Farm") breached the parties' insurance contract by failing to investigate and make settlement offers on Plaintiffs' underinsured motorists ("UIM") and Medical Payments ("Med Pay") claims. (Doc. 1.) Before the Court is State Farm's motion for summary judgment (Doc. 22), which is fully briefed.[1] For the following reasons, State Farm's motion is granted.

## **BACKGROUND**

Martin Wojtysiak started Piper Plastics, an Illinois corporation with its principle place of business in Illinois. (Doc. 23 ¶¶ 5-6.) Piper Plastics registered all its vehicles through a State Farm insurance agent located in Illinois. (¶ 12.)

Wojtysiak purchased a 2003 Cadillac Escalade in California, where he was living at

---

[1] State Farm requested oral argument, but after reviewing the parties' briefing and the record, the Court finds oral argument unnecessary. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

the time. (¶ 7.) Wojtysiak then drove his Escalade to Illinois for it to be registered and licensed. (¶¶ 8, 17.) The Escalade's Illinois license plate read "Piper II." (¶ 17.) Wojtysiak also insured the Escalade with State Farm in Illinois, using the same Illinois insurance agent as Piper Plastics. (¶¶ 10-11.) Wojtysiak's Cadillac Escalade insurance policy ("Escalade Policy") provided for $1,000,000 per person per accident in UIM coverage, and $100,000 in Med Pay coverage. (Doc. 23-1 at 3.) Wojtysiak and Piper Plastics were Named Insureds on the Escalade Policy, and Wojtysiak used Piper Plastics' corporate address in Illinois for the "[l]ocation used to determine rate charged[.]" (Doc. 23 ¶¶ 6, 13-15.) Moreover, Piper Plastics paid Wojtysiak a $400 per month stipend, at least in part, to pay the premium on the Escalade Policy. (¶ 16.)

In 2006, Wojtysiak moved to Arizona. (¶ 28.) The parties dispute whether Wojtysiak informed State Farm that he was relocating the Escalade to Arizona. Nevertheless, as of 2011, Wojtysiak continued to register the Escalade in Illinois, using Piper Plastics' address. (¶¶ 31-32.) On October 2, 2011, Wojtysiak was involved in a motor vehicle accident with Gerard Sheridan, an underinsured driver. (¶ 29.) At the time of the accident, the Escalade was still registered in Illinois using Piper Plastics corporate address and included the company as a Named Insured under the Escalade Policy. (Doc. 23 ¶¶ 31-32; Doc. 23-1 at 3.)

In September 2015, Wojtysiak settled with Sheridan for $1,104,683.85 ("Sheridan Settlement"). (Doc. 29 ¶ 16; Doc. 23-2 at 12.) Plaintiffs also sought UIM and Med Pay coverage under the Escalade Policy. State Farm declined. Thereafter, Plaintiffs filed suit, alleging breach of contract against State Farm. State Farm now moves for summary judgment on all of Plaintiffs' claims.

## **LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a

reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

## **DISCUSSION**

**I. UIM Coverage**[2]

First, State Farm contends that Plaintiffs are not entitled to UIM coverage under the Escalade Policy because State Farm is entitled to set off the Sheridan Settlement against the UIM insurance under the "difference in limits" provision. Under such a provision, an UIM insurer's liability is capped at the UIM coverage limit less those amounts the insured actually recovers under the applicable insurance policies maintained on the underinsured vehicle. 215 ILCS 5/143a-2(4). Plaintiffs argue that the "difference in limits" provision is void under Arizona law. The Escalade Policy, however, states:

---

[2] Plaintiffs' complaint alleges, among other things, a breach of contract claim concerning the UIM provision for a Chevrolet Corvette. (Doc. 1-1 ¶ 9.) State Farm moved for summary judgment on the claim. In response, Plaintiffs concede that this claim should be dismissed because the Corvette was not covered by a UIM provision during the relevant time period. (Doc. 28 at 2 n.1) ("Plaintiffs concede that the Corvette did not have UIM coverage at the time of the subject crash and only oppose Defendant's Motion regarding the Cadillac Escalade . . . ."). The Court therefore dismisses the Corvette UIM claim.

> Without regard to choice of law rules, the law of the state of:
>
> a. Illinois will control in the event of any disagreement as to the interpretation and application of any provision in this policy . . .

(Doc. 23-1 at 46.) The parties agree that resolution of the "difference in limits" issue requires the Court to determine whether the Escalade Policy's choice of law provision controls.

**A. Choice of Law**

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). As this Court sits in Arizona, it applies Arizona choice of law rules. In a contract action, Arizona follows the Restatement (Second) of Conflict of Laws ("Restatement"). *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003). Where, as here, the contract includes a choice of law provision, § 187 of the Restatement provides the test for whether that provision is "valid and effective."[3] *Id.* (quoting *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992)). Under § 187, the court must first decide whether the "particular issue"—here, a "difference in limits" provision—"is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement § 187(1). If the answer to that question is yes, then the choice of law clause is valid and effective.

In determining whether the parties could have resolved a particular issue by explicit agreement, courts apply "the local law of the state selected by application of the rule of § 188." *Cardon*, 841 P.2d at 203 (citing Restatement § 187 cmt. c)). Section 188(2) sets forth the following factors for determining the local law for the § 187(1) analysis:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,

---

[3] Restatement § 187, and not § 193, applies to insurance contracts that contain choice of law provisions. *See, e.g.*, *Lloyds of London Syndicate 2003 v. Mallet*, No. 11-CV-979-PHX-GMS, 2012 WL 1831514, at * 3 (D. Ariz. May 18, 2012).

- 4 -

> (d) the location of the subject matter of the contract, and
>
> (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) § 188(2); *see also Parkway Bank & Tr. v. Zivkovic*, 304 P.3d 1109, 1114 (Ariz. Ct. App. 2013) (applying § 188(2) factors to determine "local law"). These contacts are guidelines indicating where the interests of particular states may touch the insurance contract at issue. Depending on the circumstances not every factor will be applicable in every case. Nevertheless, the Court discusses all five factors below.

The first and second § 188 factors favor application of Illinois law because it is undisputed that Wojtysiak personally purchased the Escalade Policy from State Farm, an Illinois Corporation, through a State Farm insurance agent operating out of Illinois. (Doc. 23 ¶¶ 10-11.) The third factor also favors application of Illinois law. From the initial purchase of the Escalade Policy through the October 2011 accident, the Escalade was registered in Illinois using Piper Plastics' corporate address and including the company as a Named Insured. (¶¶ 6, 14, 31-33.) Wojtysiak also paid premiums to State Farm in Illinois. (¶ 16.)

The fourth factor, on balance, also favors application of Illinois law. The location of the insured risk is an important contact to be considered. *See generally* Restatement § 193. "[I]n the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." *Id.* at cmt. b. But where the insurance company is not informed of a change in the vehicle's principle location, this factor is considerably less significant. *See, e.g.*, *Beckler v. State Farm Mut. Auto. Ins. Co.*, 987 P.2d 768, 774 (Ariz. Ct. App. 1999) (citing cases, including, *State Farm Mut. Ins. Co. v. Conyers*, 784 P.2d 986, 991 (N.M. 1989)). Although it is undisputed that Wojtysiak moved to Arizona in 2006, the parties offer competing evidence as to whether he informed State Farm that the Escalade would be principally garaged in Arizona thereafter. (*Compare* Doc. 23 ¶ 30 *with* Doc. 29 at 6-7 ¶¶

19-20, 22-24.) On the one hand, State Farm corresponded with Wojtysiak at his Arizona residence regarding the Escalade Policy. (Doc. 29 at 7 ¶ 27.) On the other hand, the Escalade continued to be registered in Illinois using Piper Plastics' address. (Doc. 26 ¶¶ 31-33.) And, although Wojtysiak resided in Arizona, his failure to comply with Arizona law requiring residents to register their vehicle in the state if it is to be driven on the streets or highways, A.R.S. § 28-2153(A), is circumstantial evidence that the Escalade was not principally located in Arizona. Given the uncertainty about whether State Farm knew that the Escalade was being principally garaged in Arizona, this factor is less significant, but the more probative evidence points toward application of Illinois law.

The fifth factor is neutral. State Farm and Piper Plastics have their place of business in Illinois, while Wojtysiak is a resident of Arizona.

On balance, these factors point to Illinois law as the "local law" for purposes of the § 187(1) analysis. Under Illinois law, the parties are permitted to explicitly agree to a "difference in limits" provision. 215 ILCS 5/143a-2(4); *see also Martin v. Ill. Farmers Ins.*, 742 N.E.2d 848, 853 (Ill. App. Ct. 2000) ("[S]ection 143(a)-2(4) must be construed to 'fill the gap' between the benefits paid by the tortfeasor's insurance carrier and the limit of underinsurance coverage specified in the insured's policy.").[4] The choice of law provision is therefore valid and effective.[5]

### B. Application of "Difference in Limits" Provision

---

[4] Section 143a-2(4) "clearly reveals the General Assembly's intent to limit underinsured motorists carriers from having to provide benefits where the limits of the bodily injury liability insurance applicable to an at-fault driver's vehicle exceed the limits of the relevant underinsured motorist coverage." *Sherrod v. Esurance Ins. Services, Inc.*, 65 N.E.3d 471, 476 (Ill. App. Ct. 2016).

[5] Although the Court need not continue its analysis under § 187(2), the Court is persuaded that Illinois not only has a substantial relationship to the parties and the transaction, but also that it has a materially greater interest than Arizona. Arizona's interest in applying its Underinsured Motorists Act in this case is not greater than the combined weight of Arizona's interest in enforcing choice-of-law provisions generally and Illinois' interest in seeing its substantive law applied to a contract entered into in Illinois by an entity domiciled in Illinois concerning a vehicle registered in Illinois. *See, e.g., Wissot v. Great-W. Life & Annuity Ins. Co.*, 619 F. App'x 603, 605 (9th Cir. 2015) (applying choice of law provision where the selected state was the domicile for a party to the contract). Therefore, even if the Court were to have proceeded to § 187(2), the choice of law provision is enforceable and Illinois law is applicable.

Construction of the terms of an insurance policy and whether the policy comports with statutory requirements are questions of law properly decided on a motion for summary judgment. *See Librizzi v. State Farm Fire & Cas. Co.*, 603 N.E.2d 821, 824 (Ill. App. Ct. 1992). When the language of an insurance policy is clear and unambiguous, a reviewing court will give effect to those terms. *Grevas v. U.S. Fid. & Guar. Co.*, 604 N.E.2d 942, 944 (Ill. 1992). Here, the UIM coverage in the Escalade Policy provides, in pertinent part:

**UNDERINSURED MOTOR VEHICLE COVERAGE**

**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident."

   (a) The most [State Farm] will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insured as a result of that bodily injury is lesser of:

      (1) the limit shown under "Each Person" less the amounts actually recovered under the applicable bodily injury insurance policies . . . on the ***underinsured motor vehicle***; or

      (2) the total amount of all damages resulting from the ***bodily injury*** less those amounts actually recovered under the applicable bodily injury insurance policies . . . maintained on the ***underinsured motor vehicle***.

(Doc. 23-1 at 30 (emphasis in original).) The Court finds the difference in limits provision clear and unambiguous. Plaintiffs do not argue otherwise.

Applying the provision to the undisputed facts, State Farm is entitled to summary judgment because Wojtysiak's recovery under the Sheridan Settlement—$1,104,683.85— exceeded both the Escalade Policy's UIM coverage limits ($1,000,000 per person, per accident) and Wojtysiak's damages ($564,416.41). (Docs. 23-1 at 3; 23-2 at 12; 29 at 8-9 ¶¶ 31, 35).[6] This application is consistent with public policy. *See* 215 ILCS 5/143a-2(4);

---

[6] Plaintiffs argue that even if the Escalade Policy's choice of law provision is enforceable, "[s]ummary [j]udgment is still inappropriate per [Arizona's] Doctrine of Reasonable Expectations." (Doc. 28 at 11.) Illinois law, which governs the Escalade Policy, expressly rejects the reasonable expectations doctrine. *See Smagala v. Owens*, 717 N.E.2d 491, 496-97 (Ill. App. Ct. 1999) ("The reasonable expectations test has been rejected by the courts of this state.").

- 7 -

*Sulser v. Country Mut. Ins. Co.*, 591 N.E.2d 427, 431 (Ill. 1992) ("Parties to a contract may agree to any terms they choose unless their agreement is contrary to public policy.").

**II. Med Pay Coverage Claims**[7]

Next, State Farm argues that it is not liable for Wojtysiak's medical expenses. (Doc. 22 at 11-12.) Specifically, State Farm contends that the Sheridan Settlement triggered the Escalade Policy's "Limits" and "Nonduplication" clauses, precluding Plaintiffs from recovering Med Pay coverage. (*Id.* at 12.) The Med Pay provision states in relevant part:

> . . .
>
> **Limit**
>
> . . .
>
> If the injured ***person*** has been paid damages for the ***bodily injury*** by or on behalf of the liable party in an amount:
>
> . . .
>
> 2. equal to or greater than the total ***medical expenses*** and funeral expenses incurred by the injured ***person***, then ***we*** owe nothing under Medical Payments Coverage.
>
> **Nonduplication**
>
> > ***We*** will not pay any ***medical expenses*** or funeral expenses under Medical Payments Coverage that have already been paid:
> >
> > . . .
> >
> > (2) by or on behalf of a party who is legally liable for the ***insured's bodily injury***.

(Doc. 23-1 at 17 (emphasis in original).)

Where, as here, the language of an insurance policy is clear and unambiguous, the Court will give effect to those terms. *See* Grevas, 604 N.E.2d at 944. The "Limits" and

---

[7] For reasons stated above, Illinois law is the "local law" for purposes of the § 187(1) analysis. Under Illinois law, the parties are permitted to explicitly agree to "Limits" and "Nonduplication" provisions for Med Pay coverage. *See, e.g.*, *Gibson v. Country Mut. Ins. Co.*, 549 N.E.2d 23, 26 (Ill. App. Ct. 1990); *Becker v. Country Mut. Ins. Co.*, 510 N.E.2d 1316, 1321 (Ill. App. Ct. 1987). The choice of law provision is therefore valid and effective.

"Nonduplication" clauses expressly prohibit any recovery under Med Pay coverage where the insured has been paid damages for bodily injury by the liable party in an amount greater than the medical expenses incurred by the insured. It is undisputed that, as a part of the Sheridan Settlement, Wojtysiak received $1,104,683.85 and agreed to release any claims against Sheridan. (Doc. 29 ¶ 31.) The Sheridan Settlement states in relevant part that Wojtysiak released "any and all rights, claims, causes of action, . . . and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to personal injuries . . . ." (Doc. 23-2 at 12). It also is undisputed that, as of the date of the Sheridan Settlement, Wojtysiak had incurred over hundreds of thousands of dollars in medical expenses arising out of injuries suffered in the accident. (Doc. 29 ¶ 33.) Because Wojtysiak received a settlement for, at least in part, bodily injury that is greater than the total medical expenses incurred, State Farm owes "nothing" under Med Pay coverage.

In response, Plaintiffs argue that the Sheridan Settlement "was not broken down into categories and instead was a single amount which included past and future medical bills, general damages, loss of consortium, punitive damages and property damage in unspecified amounts." (Doc. 28 at 14.) Moreover, Plaintiffs argue that "it is impossible to suggest the settlement accounted" for all medical bills because Wojtysiak had only incurred $277,856.51 in medical bills at the time of the Sheridan Settlement. (*Id.*) By Plaintiffs own admission, however, the Sheridan Settlement accounted for future medical bills. (Doc. 28 at 13 ("Plaintiffs also made claims for future medical bills . . .").) The fact that the Sheridan Settlement does not specifically set out the amount for future medical bills is of no moment. Plaintiffs cite no authority suggesting otherwise. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**. State Farm is dismissed from this action.

Dated this 29th day of August, 2019.

Douglas L. Rayes
United States District Judge